IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALBANY & EASTERN RAILROAD
COMPANY, an Oregon corporation,

   Plaintiff,

  v.

LINN COUNTY, an Oregon municipal
corporation, and ROBERT WHEELDON,
Director of the Linn County
Planning and Building Department,
in his official capacity,

   Defendants.

Case No. 6:13-cv-00216-AA
OPINION AND ORDER

---

Colleen Konicek
Elizabeth Bryant
Myles Tobin
Fletcher & Sippel LLC
29 N. Wacker Drive, Suite 920
Chicago, Illinois 60606

John E. Kennedy
Morley, Thomas & McHill LLC
80 E. Maple Street
Lebanon, Oregon 97355
  Attorneys for plaintiff

Page 1 - OPINION AND ORDER

Edward F. Schultz
Joel D. Kalberer
Weatherford, Thompson, Cowgill, Black & Schultz PC
130 S.W. First Avenue
P.O. Box 667
Albany, Oregon 97321
        Attorneys for defendants

AIKEN, Chief Judge:

        Plaintiff Albany & Eastern Railroad Company ("AERC") moves to
enjoin defendants Linn County ("County") and Robert Wheeldon from
enforcing certain zoning regulations, land use regulations, and
development approval requirements.  For the reasons set forth
below, AERC's motion is denied.

**BACKGROUND**

        AERC is a common carrier providing railroad transportation
service over 67 miles of main line tracks in Oregon.  In August
2012, AERC began constructing a transload[1] facility ("Facility") in
Crabtree, Oregon, which is located within the County; prior to
AERC's construction, there was no activity, commercial or
otherwise, on that property for over 20 years.  The 2.42 acre
Facility-site is owned outright by AERC and is zoned by the County
for Limited Industrial use; it is adjacent to AERC's rail lines, a
tavern, a child care facility, and several residences.

        In October 2012, the Facility was complete and transloading

----

[1] "Transloading is the transfer of commodities between rail
cars and trucks, a process used when the ultimate destination of
a commodity is not served by a railroad."  Tex. Cent. Bus. Lines
Corp. v. City of Midlothian, 669 F.3d 525, 528 (5th Cir. 2012).

Page 2 - OPINION AND ORDER

activities commenced with AERC's sole customer, Weyerhaeuser. At that time, Teevin Bros. Land & Timber Co., LLC ("Teevin") was operating the Facility pursuant to its contract with AERC. On October 3, 2012, Wheeldon advised Teevin, via an Initial Notice to Abate, that construction and operation of the Facility violated the County's code and regulations. On October 25, 2012, AERC[2] filed an application with the County for a Director's Interpretation of the County's code and regulations as they applied to the Facility. On December 20, 2012, Wheeldon served AERC with a Notice of Decision, in which he found that the site is not currently zoned for the Facility, which constituted Heavy Industrial use. Wheeldon further found that the Facility is not shielded by federal preemption because Teevin is not a rail carrier. Wheeldon therefore ordered Teevin to cease all operations at the Facility until it obtained authorization to continue from the County.

Thereafter, AERC terminated its contract with Teevin and, in January 2013, they entered into a new agreement ("Agreement") that granted AERC greater control over the Facility. On February 7, 2013, AERC filed a complaint in this Court, seeking: (1) a declaratory judgment that the Interstate Commerce Commission Termination Act ("ICCTA") preempts the County's code and

---

[2] While AERC's activities were not the subject of the Initial Notice to Abate, the County allows "any person" to "file an application seeking an interpretation of the Land Development Code." Linn Cnty. Code § 921.622.

Page 3 - OPINION AND ORDER

regulations to the extent that defendants plan to enforce these requirements with respect to the Facility; (2) a declaratory judgment that enforcement of the County's code and regulations violates the Commerce Clause; (3) a declaratory judgment that enforcement of the County's code and regulations violates 42 U.S.C. § 1983; and (4) permanent injunctive relief. That same day, AERC filed a motion for a temporary restraining order ("TRO"). On February 8, 2013, this Court denied AERC's TRO motion. On February 19, 2013, AERC filed the present motion as to its ICCTA claim.

## STANDARD

A preliminary injunction, as a matter of equitable discretion, is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. Winter v. Natural Res. Def. Council Inc., 555 U.S. 7, 24 (2008). The party seeking a preliminary injunction must demonstrate: "(1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [its] favor; and (4) that an injunction is in the public interest." Pimentel v. Dreyfus, 670 F.3d 1096, 1105 (9th Cir. 2012) (citing Winter, 555 U.S. at 20). "The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Alliance For The Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

Page 4 - OPINION AND ORDER

**DISCUSSION**

This dispute centers on whether the County's zoning regulations, land use regulations, and development approval requirements are preempted by federal law. AERC asserts that, if defendants' actions are not enjoined, it "will be forced to close the facility permanently, and will suffer a loss of customer goodwill[,] the opportunity to compete in the market for transportation of commodities in the region," damages from its contract with Weyerhaeuser, and future lost profits. Pl.'s Mem. is Supp. of Mot. Prelim. Inj. 1. Additionally, AERC contends that it is likely to succeed on the merits of its preemption claim because, under the Agreement, "the activities conducted at the facility . . . constitute rail operations governed exclusively by the ICCTA." Id. AERC argues that the third and fourth elements also weigh in its favor.

In response, defendants clarify that AERC "was [never] ordered by Linn County not to conduct operations and to cease operations of the facility"; rather, Teevin is the only party that has been informed of its "inability to proceed without violating state and local regulations," and that was only when Teevin was controlling the Facility pursuant to its initial contract with AERC. Defs.' Resp. to Mot. Prelim. Inj. 4. Further, because they had "no opportunity to factually respond to the allegations based on the new contracts that were invented after Linn County made its

decision," defendants do not directly address AERC's arguments regarding its likelihood of success on the merits. Id. at 6-7. Defendants contend, however, that AERC cannot establish irreparable injury because the only loss at issue is financial. Lastly, defendants assert that remaining factors do not favor AERC.

The Court finds the issue of whether AERC will suffer irreparable injury dispositive. In its TRO motion, AERC argued that equitable relief was necessary to prevent "lost profits, a loss of customer goodwill, damages resulting from breach of contract, and the opportunity to compete in the market for transportation of commodities in the region," as well as "future lost profits, which are difficult to calculate, and because there is a significant likelihood that Defendants' actions will violate its constitutional rights." Pl.'s Mem. in Supp. of Mot. TRO 1, 18-24. I denied AERC's TRO motion because "the standards required to enter a temporary restraining order are not met . . . particularly that any injury is not irreparable and could be cured by money damages." Order (Feb. 8, 2013).

In its present motion, AERC's arguments regarding irreparable injury are virtually identical to those asserted previously. Compare Pl.'s Mem. in Supp. of Mot. Prelim. Inj. 19-26, with Pl.'s Mem. in Supp. of Mot. TRO 18-24. The factors governing the issuance of a TRO are generally consistent with those governing preliminary injunctions. See Wray v. Or. Dep't of Corr., 2012 WL

Page 6 - OPINION AND ORDER

4063025, *2 n.3 (D.Or. Sept. 14, 2012) (citing L.A. Unified Sch. Dist. v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 650 F.2d 1004, 1008 (9th Cir. 1981)); see also Pl.'s Mem. in Supp. of Mot. TRO 6. As such, because AERC has not set forth any additional arguments or evidence[3] demonstrating that the alleged injury is irreparable or could not be cured by money damages, it neglected to carry its burden regarding this factor. In other words, AERC failed to provide a basis for this Court to depart from its prior ruling.

Accordingly, AERC's motion is denied. Nonetheless, because the underlying merits of this case are intertwined with the present motion and because the County has yet to address the effects of the Agreement, the Court will briefly discuss the remaining factors.

I.    Likelihood of Success on the Merits

When a court evaluates the preemptive scope of a federal statute, "the purpose of Congress is the ultimate touchstone." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (citation and internal quotations omitted). The ICCTA, part of a broader network of federal statutes regulating railroads, focuses mainly on state

_____

[3] AERC argues, without so citing, that it did provide such "additional evidence in its motion for a preliminary injunction and supporting documents." Pl.'s Reply to Mot. Prelim. Inj. 14. An independent review of the record reveals that the only evidence before the Court addressing this factor – i.e. Mark Russell's affidavit – is substantively the same as the evidence submitted by AERC in support of its TRO motion. Compare Russell Aff. in Supp. of Mot. Prelim. Inj. ¶¶ 24-33, with Russell Aff. in Supp. of Mot. TRO ¶¶ 33-36, 38-40. Thus, AERC did not, in fact, provide any new evidence regarding whether the alleged injury is irreparable.

Page 7 - OPINION AND ORDER

and local economic regulation of railway activities.  See City of
Auburn v. U.S. Gov't, 154 F.3d 1025, 1029-30 (9th Cir. 1998), cert.
denied, 527 U.S. 1022 (1999).  Congress, via the ICCTA, granted the
Surface Transportation Board ("STB") exclusive jurisdiction over
"transportation by rail carriers," including "the construction,
acquisition, operation, [or] abandonment [of] facilities."   49
U.S.C. § 10501(b); see also 49 U.S.C. § 10102(9) (defining
"transportation").  Thus, while state and local authorities retain
certain police powers and may apply non-discriminatory regulations
to protect public health and safety, under the ICCTA, these
governments may not effectively foreclose or restrict a railroad's
ability to conduct its operations.  See Ass'n of Am. R.R. v. S.
Coast Air Quality Mgmt. Dist., 622 F.3d 1094, 1097 (9th Cir. 2010).

Determining whether the ICCTA preempts a state or local law is
a two-step inquiry: "First, the law must seek to regulate
'transportation,' and second, that transportation must be conducted
'by a rail carrier.'" Tex. Cent. Bus. Lines Corp., 669 F.3d at
530.   Regarding the first prong, it is well-established that
"transloading qualifies as rail transportation."   Id. at 531
(citations omitted).

As to the second prong, whether transloading activities come
within the STB's jurisdiction where they are performed by a third-
party hinges on the amount of control the rail carrier exercises
over the transload facility.  See N.Y. & Atl. Ry. Co. v. Surface

Page 8 - OPINION AND ORDER

Transp. Bd., 635 F.3d 66, 72-75 (2d Cir. 2011). Factors to be considered are "whether the rail carrier owns the transloading facility; whether the rail carrier has paid for the construction and operation of the facility; whether the rail carrier holds out transloading as part of its service; whether the third-party loader is compensated by the carrier or the shipper; the degree of control retained by the carrier over the third party; and the other terms of the contract between the carrier and the third party." Borough of Riverdale, 2010 WL 3053100, *4 (S.T.B. Aug. 3, 2010).[4]

In City of Alexandria, the STB exercised jurisdiction over a transload facility operated by a non-rail carrier where: "(1) the railroad owned the transload facility and built it with its own funds; (2) the railroad paid the transload operator a fee, rather than the operator paying the railroad a fee; (3) the railroad held itself out as offering the transload services as part of its common carrier service; and (4) the transload operator had no role in setting, invoicing or collecting the transload fee." N.Y. & Atl. Ry. Co., 635 F.3d at 74-75 (citing City of Alexandria, Va., 2009 WL 381800, *2 (S.T.B. Feb. 17, 2009)); see also Borough of Riverdale, 2010 WL 3053100 at *4-5 (transloading operation qualified for

---

[4] The Ninth Circuit routinely relies on STB decisions in determining the scope of preemption under the ICCTA. See Ass'n of Am. R.R., 622 F.3d at 1097.

federal preemption[5] where railroad was responsible for making improvements to the facility, determining the rates, and controlling operating procedures).

That is precisely the case here. AERC constructed the Facility with its own funds and owns the property on which it is sited. See Russell Aff. in Supp. of Mot. Prelim. Inj. ¶ 10. AERC also pays Teevin a fee for its services; as such, and contrary to defendants' assertions, it cannot be said that Teevin is merely a lessee. See Defs.' Resp. to Mot. Prelim. Inj. 11 & Ex. B ("Agreement"), at 19. In addition, AERC holds itself out as offering transloading as part of its common carrier service, as evinced through its issuance of a public tariff. See Russell Aff. in Supp. of Mot. Prelim. Inj. ¶ 24 & Ex. C. Moreover, Teevin does not participate in setting, invoicing, or collecting the transload fee and is precluded from marketing the Facility as its own. See Agreement at 7. Finally, AERC retains control over the Facility and has removed Teevin's signs from the property and replaced them with its own. Id. at 4-7, 10; Supplemental Russell Aff. in Supp. of Mot. Prelim. Inj. ¶ 4.

---

[5] The STB reached this conclusion by evaluating contract terms that were in effect at the time, rather than an earlier transloading agreement. See Borough of Riverdale, 2010 WL 3053100 at *5; see also City of Alexandria, 2009 WL 381800 at *4 ("[p]arties are free to enter into whatever arrangements will suit their needs at a particular facility"). Accordingly, the terms of the Agreement dictate this Court's analysis in the case at bar.

In sum, while Teevin is responsible for the actual transloading, AERC clearly retains control over the Facility pursuant to their Agreement. Therefore, Teevin's operations at the Facility are part of AERC's rail transportation services and qualify for preemption. Accordingly, AERC has a strong likelihood of success on the merits of its ICCTA claim.

## II. Balance of Equities

The balance of equities does not tip in either parties' favor. While AERC asserts that any harm to defendants is "outweighed by the substantial injury" it will suffer if a preliminary injunction is not granted, because the injury at issue is primarily financial, maintenance of the status quo is not persuasive. Pl.'s Mem. in Supp. of Mot. Prelim. Inj. 26. More importantly, because defendants have not attempted to prevent AERC or Teevin from operating the Facility pursuant to their new Agreement, it is not clear that AERC would suffer any hardship absent the requested relief.

On the other hand, issuance of temporary injunctive relief would not substantively effect defendants. Defendants contend that the County's "police power interest . . . in maintaining safe roads, proper sanitation, [and] compliance with building and electrical code[s]" outweighs any harm to AERC and, further, that "logs . . . stacked higher than the four foot wall" could impact "children playing in the backyard whose swing set is within fifteen

Page 11 - OPINION AND ORDER

feet of the block wall"; however, they failed to provide any evidence that the Facility is not in compliance with any of the County's sanitation, building, or electrical codes or that its fence, which encircles the entire Facility, is in any way deficient to protect intrusion into the adjoining properties. Defs.' Resp. to Mot. Prelim. Inj. 10; see also Supplemental Russell Aff. in Supp. of Mot. Prelim. Inj. ¶ 4.

III. Advancement of the Public Interest

Finally, because enforcement of the County's regulations against the Facility is preempted by the ICCTA, the fourth factor weighs in AERC's favor. See Sammartano v. First Judicial Dist. Ct., 303 F.3d 959, 974 (9th Cir. 2002) ("it is always in the public interest to prevent the violation of a party's constitutional rights") (citation and internal quotations omitted).

## CONCLUSION

AERC's motion for a preliminary injunction (doc. 15) is DENIED. As such, AERC's request for oral argument is DENIED as unnecessary. In light of this Court's ruling regarding AERC's likelihood of success on the merits, I strongly encourage the parties to initiate settlement negotiations.

IT IS SO ORDERED.

Dated this 4th day of April 2013.

Ann Aiken
United States District Judge

Page 12 - OPINION AND ORDER